IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

DOUGLAS E. HUMPHREY,    )
        Plaintiff,   )
        )
vs.        )   Civil Action No. 14-1349
        )   Judge David Stewart Cercone/
        )   Chief Magistrate Judge Maureen P. Kelly
JOHN E. WETZEL *Jointly and Severally*   )
*sued in their individual and official*   )
*capacities*; BRIAN COLEMAN *Jointly and* )
*Severally sued in their individual and*   )
*official capacities*; VINCENT MAZESKI   )
*Jointly and Severally sued in their*   )
*individual and official capacities*; CAPT.   )
TREMPUS *Jointly and Severally sued in*   )
*their individual and official capacities*;   )
Officer SKOBOL *Jointly and Severally*   )
*Sued in their individual and official*   )
*Capacities*; Officer PENDLETON *Jointly*   )   Re: ECF No. 30
*And Severally sued in their individual and* )
*official capacities,*   )
        Defendants.   )

## REPORT AND RECOMMENDATION

## I.    RECOMMENDATION

Plaintiff Douglas E. Humphrey ("Plaintiff"), is an inmate in the custody of the

Pennsylvania Department of Corrections ("DOC"), and is currently incarcerated at the State

Correctional Institution at Fayette ("SCI Fayette"). Plaintiff brings this civil rights action against

John E. Wetzel ("Wetzel"), Brian Coleman ("Coleman"), Vincent Mazeski ("Mazeski"), Captain

Trempus ("Trempus"), Officer Skobol ("Skobol"), and Officer Pendleton ("Pendleton")

(collectively, "Defendants"), alleging that Defendants violated his rights provided by the First,

Fourth, Fifth, and Fourteenth Amendments to the United States Constitution when his legal

material was confiscated from his cell.

Presently before the Court is a Motion to Dismiss Complaint ("the Motion") submitted on behalf of Defendants. ECF No. 30. For the reasons that follow, it is respectfully recommended that the Motion be granted.

## II. REPORT

### A. FACTUAL AND PROCEDURAL BACKGROUND

According to the Complaint, Plaintiff filed a replevin action in Fayette County Court against two insurance companies and "an agent of the Commonwealth" on November 26, 2012, concerning properly being held in Fayette County. ECF No. 1: p. 2, ¶ 13; p. 39. Defendant Coleman, the Superintendent at SCI Fayette, was apparently added as a defendant in that case on December 12, 2012. Id. at p. 39. Plaintiff filed a second action in state court on August 22, 2013, in which he sought to enforce an alleged settlement agreement between Plaintiff and the District Attorney of Bradford County and two insurance companies. Id. at p. 2, ¶ 14; p. 6, ¶¶ 38, 40; p. 21, ¶¶ 120, 121. Plaintiff complains that while these suits were pending, Defendant Mazeski, who is employed by the DOC's "Legal Office" and is alleged to have represented Coleman in the first action, ordered Defendant Trempus, the Captain of Security at SCI Fayette, to confiscate Plaintiff's legal material. Id. at p. 2, ¶ 8; p. 3, ¶ 19; p. 39. According to Plaintiff, at Trempus' direction, two corrections officers, Defendants Skobol and Pendleton, came to Plaintiff's cell on March 14, 2014, and confiscated a storage box containing legal material that Plaintiff claims was essential to his two pending state court actions. Id. at p. 3, ¶¶ 20, 21; pp. 40, 49. As a result, Plaintiff alleges that he was unable to effectuate service on the defendants in those cases or respond to the Preliminary Objections filed by the defendants in the second action, thereby impeding his ability to pursue either litigation. It appears that both state court actions

were ultimately dismissed which Plaintiff claims caused him to suffer property and financial losses.  <u>Id.</u> at p. 4, ¶ 27; p. 5, ¶¶ 32, 33.

Plaintiff filed a grievance regarding the confiscation of his legal material on March 20, 2014, which was denied on April 30, 2014.  <u>Id.</u> at p. 4, ¶¶ 24, 25.  According to Plaintiff, the grievance was denied because the grievance officer was unable to review the documents that were confiscated because they had been sent to the DOC's Legal Office and were not going to be returned.  <u>Id.</u> at ¶ 25.  On May 9, 2014, Plaintiff appealed the denial of the grievance to the Facility Manager, Defendant Coleman, who upheld the denial of Plaintiff's grievance on June 5, 2014, thereby failing "to remedy the wrong."  <u>Id.</u> at ¶¶ 26, 28.  Plaintiff then submitted his final appeal to the DOC's Legal Office, which, according to Plaintiff, was the very entity that ordered Plaintiff's legal material to be confiscated.  <u>Id.</u> at ¶ 29.  Plaintiff's final appeal was denied on July 7, 2014.  <u>Id.</u> at ¶ 30.

Plaintiff filed the instant Complaint on August 28, 2014, bringing claims against Defendants for interference with access to courts (First Amendment violations) (Count I); retaliation for exercising First Amendment right (Count II); conspiracy to deprive Plaintiff of First Amendment right (Count III); seizure of personal property violating Fourth Amendment (Count IV); due process violations of Fifth and Fourteenth Amendments (Count V); violations of equal protection under the law (42 U.S.C. § 1981) (Count VI); violations of property rights (42 U.S.C. § 1982) (Count VI); violations of civil rights (§ 1985(3) via First Amendment) (Count VIII); and two state law claims for conversion regarding Plaintiff's legal material (Count IX.A) and his "identifying information" (Count IX.B).  ECF No. 1.

On December 16, 2014, Defendants filed a Motion to Dismiss Complaint, ECF No. 30, and on December 30, 2014, Plaintiff filed a Response to Defendants' Motion to Dismiss.  ECF

No. 32.  In addition, Plaintiff filed a Supplemental Pleading to Defendants' Motion to Dismiss on January 9, 2015.  ECF No. 33.  As such, the Motion is ripe for review.

### B.    STANDARD OF REVIEW

In assessing the sufficiency of the complaint pursuant to a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must accept as true all material allegations in the complaint and all reasonable factual inferences must be viewed in the light most favorable to the plaintiff.  Odd v. Malone, 538 F.3d 202, 205 (3d Cir. 2008).  The Court, however, need not accept bald assertions or inferences drawn by the plaintiff if they are unsupported by the facts set forth in the complaint.  See California Pub. Employees' Ret. Sys. v. The Chubb Corp., 394 F.3d 126, 143 (3d Cir. 2004), *citing* Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997).  Nor must the Court accept legal conclusions set forth as factual allegations.  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).  Rather, "[f]actual allegations must be enough to raise a right to relief above the speculative level."  Id., *citing* Papasan v. Allain, 478 U.S. 265, 286 (1986).   Indeed, the United States Supreme Court has held that a complaint is properly dismissed under Fed. R. Civ. P. 12(b)(6) where it does not allege "enough facts to state a claim to relief that is plausible on its face," id. at 570, or where the factual content does not allow the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  See Phillips v. Cnty. of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008) (finding that, under Twombly, "labels, conclusions, and a formulaic recitation of the elements of a cause of action" do not suffice but, rather, the complaint "must allege facts suggestive of [the proscribed] conduct" and that are sufficient "to raise a reasonable expectation that discovery will reveal evidence of the necessary element[s] of his claim").

## C.    DISCUSSION

### 1.    Section 1983 Claims (Counts I, II, III, IV and V)

The first five claims set forth in Plaintiff's Complaint have been brought pursuant to 42

U.S.C. § 1983 ("Section 1983"), which provides that:

> Every person who, under color of any statute, ordinance, regulation,
> custom, or usage, of any State or Territory or the District of Columbia,
> subjects, or causes to be subjected, any citizen of the United States or other
> person within the jurisdiction thereof to the deprivation of any rights,
> privileges, or immunities secured by the Constitution and laws, shall be
> liable to the party injured in an action at law, suit in equity, or other proper
> proceeding for redress . . . .

42 U.S.C. § 1983.  "Section 1983 provides remedies for deprivations of rights established in the

Constitution or federal laws.  It does not, by its own terms, create substantive rights."  Kaucher v.

Cnty. of Bucks, 455 F.3d 418, 423 (3d Cir. 2006), *citing* Baker v. McCollan, 443 U.S. 137, 145

n.3 (1979) (footnote omitted).  Thus, in order to state a claim for relief under Section 1983, the

plaintiff must allege facts from which it could be inferred that "the defendant, acting under color

of state law, deprived him or her of a right secured by the Constitution or the laws of the United

States."  Id. at 423.  Here, Plaintiff contends that Defendants deprived him of his rights provided

by the First, Fourth, Fifth and Fourteenth Amendments to the Constitution.

### a.    First Amendment Claims

As previously noted, Plaintiff has brought four First Amendment claims in his Complaint,

three of which are brought pursuant to Section 1983: a claim for interference with access to

courts against Defendants Skobol, Pendleton, Trempus, and Mazeski at Count I; a First

Amendment retaliation claim against Defendant Mazeski at Count II; and a claim for conspiracy

to deprive Plaintiff of his First Amendment rights against Mazeski, Trempus and Coleman at

Count III.[1]  Defendants argue that all of these claims should be dismissed as a matter of law because the United States Court of Appeals for the Third Circuit has held that the DOC's policy prohibiting prisoners from possessing UCC material (and thus allowing the confiscation of UCC material) does not violate an inmate's First Amendment rights.  See Monroe v. Beard, 536 F.3d 198, 207-09 (3d Cir. 2008).  Defendants also argue that Plaintiff has failed to plead sufficient facts to state a First Amendment conspiracy claim against Defendants Mazeski and Trempus at Count III.

The difficulty with Defendants' first argument, however, is that Plaintiff's First Amendment claims are not based on the confiscation of UCC material.  Rather, Plaintiff claims that the seizure of documents from his cell went "beyond 'UCC material,'" ECF No. 1, p. 66, and that the legal material he claims was confiscated included pleadings, motions, court orders, exhibits, case law and case notes, pertaining to the two law suits he filed in state court.  Id., at pp. 49, 61, 62, 63, 65, 68, 69.  Thus, the fact that the DOC has a legitimate policy prohibiting inmates from possessing UCC material does not speak to the legal documents upon which Plaintiff bases his claims and is irrelevant.

It nevertheless appears that Plaintiff has otherwise failed to state a First Amendment claim for interference with access to courts or for retaliation.

### (1)    Access to Courts Claims (Count I)

An incarcerated prisoner, like any other citizen, has a constitutionally protected right of access to the courts.  Lewis v. Casey, 518 U.S. 343, 346 (1996).  The United States Supreme Court has established that in order to have standing to bring a claim for denial of access to the courts, the inmate must establish that he suffered an "actual injury" as a result of the alleged

---

[1] Although the First Amendment is implicated in Count VIII of the Complaint, that claim has been brought pursuant to 42 U.S.C. § 1985 and is discussed *infra*, at pp. 19-20.

denial.  Id. at 349.  See Dunbar v. Barone, 487 F. App'x 721, 724 (3d Cir. 2012).  "Actual injury occurs when a prisoner demonstrates that a 'nonfrivolous' and 'arguable' claim was lost because of the denial of access to the courts."  Fortune v. Hamberger, 379 F. App'x 116, 120 (3d Cir. 2010), *quoting* Christopher v. Harbury, 536 U.S. 403, 415 (2002).  See Dunbar v. Barone, 487 F. App'x at 724; Atwell v. Lavan, 557 F. Supp. 2d 532, 558-59 (M.D. Pa. 2008), *aff'd*, 366 F. App'x 393 (3d Cir. 2010) (proof of actual injury caused by virtue of absence of records is required).  Thus, in order to state a claim for denial of access, the allegedly lost suit must have been non-frivolous since losing the ability to litigate a frivolous lawsuit simply causes no injury.  Christopher v. Harbury, 536 U.S. at 415.  It therefore follows that "the underlying cause of action . . . is an element that must be described in the complaint, just as much as the allegations must describe the official acts frustrating the claim."  Id.

Here, Plaintiff alleges that the confiscation of his legal material interfered with two state court proceedings that he had pending at the time: Case No. 2541 of 2012 GD (Replevin) and Case No. 2014-cv-1121-cv (Complaint for Judgment).  ECF No. 1, ¶¶ 13, 14, 16, 35-40.[2] Plaintiff, however, has not offered sufficient factual allegations concerning those suits for the Court to conclude that they were non-frivolous or that Plaintiff suffered any injury because they were dismissed.

With respect to Case No. 2541 of 2012, Plaintiff alleges only that it was a replevin action filed in Fayette County Court against "two insurance businesses and an agent of the Commonwealth . . . concerning property being held in Fayette County."  Id. at p. 39.  See Id. at p. 2-3, ¶¶ 13, 18.  Other than a general reference to "bonds," however, Plaintiff has not alleged

---

[2] According to the Complaint, the latter case, No. 2014-cv-1121-cv, was originally filed in Fayette County at No. 1636 of 2013 but was dismissed based on improper venue.  Plaintiff, however, was permitted to amend the complaint and the case was then transferred to Dauphin County Court and docketed at Case No. 2014-cv-1121-cv. See ECF No. 1, ¶¶ 13, 14, 16.

the nature of the property he sought to recover or indicated how the named defendants were liable to him.  See Id. at p. 41.

More importantly, based on what Plaintiff has alleged in the Complaint, it appears he is unable to show that he suffered an actual injury.  Plaintiff claims that his access to the courts was interfered with when Defendants confiscated his legal material because he was unable to serve the John Doe defendant or the DOC and pursue his claims against them.  ECF No. 1, ¶¶ 33, 35, 37.  Plaintiff, however, has not identified the John Doe defendant that he wanted to serve or otherwise alleged facts to suggest he had a cause of action against him.  Moreover, it appears that the DOC would have been entitled to sovereign immunity even if Plaintiff had been able to serve the DOC with the Complaint.  See Edelman v. Jordan, 415 U.S. 651, 663 (1974); Laskaris v. Thornburgh, 661 F.2d 23, 25 (3d Cir. 1981), *citing* Mt. Healthy City Bd. of Educ. v. Doyle, 429 U.S. 274, 280 (1977) (finding that the Eleventh Amendment bars a civil rights suit in federal court against a state, or a department or agency of the state having no existence apart from the state as a defendant).  See also 42 Pa. C.S.A. § 8521(b).  It therefore cannot be said that Plaintiff suffered an injury by being unable to proceed with his case at No. 2541 of 2012 GD against John Doe or the DOC.

With respect to his state court action brought at Case No. 2014-cv-1121-cv, Plaintiff claims that the confiscation of his legal material prevented him from enforcing the "settlement agreement" which resulted in financial losses.  ECF No. 1, ¶¶ 14-16, 32, 38, 40.  According to Plaintiff's allegations in the instant Complaint, however, there was no settlement agreement to enforce in the underlying action.  Plaintiff alleges only that he sent District Attorney Daniel Barrett, who was a defendant in the state court action, a series of letters and/or notices regarding allegedly fraudulent bonds/securities that had allegedly been created using Plaintiff's "personal

identifying information." ECF No. 1, ¶¶ 82-89, 93. Plaintiff contends that because he stated in the letters/notices that Attorney Barrett's failure to respond "would be recognized and accepted as his lawful, legal and binding agreement with the Plaintiff and admission to the facts as stated," Attorney Barrett's failure to respond somehow created an implied settlement agreement. ECF No. 1, ¶¶ 87, 93, 94, 97. Plaintiff then alleges that, "[b]ased upon the terms set forth in the settlement agreement, the Plaintiff submitted tort claims to Pennsylvania Counties Risk Pool (PCoRP) and Bureaus of Risk and Insurance Management (BRIM), providing each 30 days to settle." Id. at ¶ 100. Plaintiff then contends that PCoRP and BRIM's failure to respond to his claims and subsequent notices of default created an implied contract whereby PCoRP and BRIM agreed to be "subject to full liability as bonding/insurance providers or otherwise, allowing lien to be filed on all property, assets, accounts, to establish and attach the lien for the sum certain for 'full satisfaction and accord' on behalf of the Plaintiff." Id. at ¶ 107. As a result, Plaintiff filed a Complaint to Enforce Settlement Agreement in which he named Attorney Barrett, PCoRP and BRIM as defendants. Id. at ¶¶ 110-114. Because Plaintiff's legal documents were confiscated before he had the opportunity to obtain the necessary copies of the complaint for service or respond to the Preliminary Objections submitted by the defendants in that case, Plaintiff alleges that his access to the courts was interfered with which resulted in the case being dismissed.

Contrary to Plaintiff's assertion, however, Attorney Barrett, PCoRP and BRIM's silence or failure to respond to Plaintiff's complaints and/or demands does not constitute an acceptance of an offer or serve to create a binding agreement. See Reid v. Diversified Consultants, Inc., 2013 WL 5818886, at *3 (M.D. Pa. Oct. 29, 2013), *quoting* Mazzella v. Koken, 559 Pa. 216, 224, 739 A.2d 531, 536 (Pa. 1999) ("[b]ecause the enforceability of settlement agreements is governed by the principles of contract law, a meeting of the minds is required.... '[T]he minds of

the parties should meet upon all of the terms, as well as the subject-matter'"). Thus, there was

no settlement agreement to enforce and no valid suit to defend. Further, as Plaintiff has

acknowledged, it is clear from the instant Complaint and the document attached thereto that the

Preliminary Objections filed by the defendants in that case were sustained by the Judge "upon

consideration." Id. at p. 20, ¶ 117; p. 59. Although Plaintiff complains that he did not have the

opportunity to respond to the Preliminary Objections, his inability to do so does not suggest that

the Preliminary Objections, which the Judge clearly considered, were improperly sustained or

that Plaintiff's claims otherwise had merit. Under these circumstances, Plaintiff is unable to

show that his underlying state court action at Case No. 2014-cv-1121-cv was non-frivolous.

Finally, it should be noted that Plaintiff has brought his access to the courts claims

against Defendants Mazeski, Skobol, Trempus, and Pendleton but has failed to allege that any of

these Defendants were aware that Plaintiff had filed Case No. 2014-cv-1121-cv in state court. It

therefore cannot be said that these Defendants confiscated Plaintiff's legal material in order to

interfere with that particular case.

Because Plaintiff has failed to allege any facts to show that his state court actions were

non-frivolous, his access to courts claims fail as a matter of law. See Caldwell v. Folino, 2009

WL 3082524, at *14-15 (W.D. Pa. June 10, 2009), *Report and Recommendation adopted by*

2009 WL 3055298 (W.D. Pa. Sept. 21, 2009) (finding that, because the plaintiff's underlying

PCRA petition was denied as untimely, it was not non-frivolous and that the plaintiff's denial of

access to courts claim therefore failed as a matter of law).

### (2)      Retaliation Claims (Count II)

At Count II of the Complaint, Plaintiff brings a First Amendment retaliation claim against

Defendant Mazeski claiming that Mazeski caused his legal material to be confiscated in

retaliation for Plaintiff having added the DOC as a defendant to his state court suit at Case No. 2541 of 2012 GD.

It is well settled that retaliation for the exercise of a constitutionally protected right may violate the protections of the First Amendment, which is actionable under Section 1983. Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001); White v. Napoleon, 897 F.2d 103, 112 (3d Cir. 1990). Merely alleging the fact of retaliation, however, is insufficient. Rather, to prevail on a retaliation claim, a plaintiff must demonstrate: (1) that he engaged in constitutionally protected conduct; (2) that an adverse action was taken against him by a prison official; and (3) that there is a causal connection between the exercise of his constitutional rights and the adverse action. Mitchell v. Horn, 318 F.3d 523, 530 (3d Cir. 2003). To constitute an adverse action for purposes of a retaliation claim, the action taken must be "sufficient to deter a person of ordinary firmness from exercising his [constitutional] rights." Id., *quoting* Allah v. Seiverling, 229 F.3d 220, 224-25 (3d Cir. 2000). Actions deemed sufficiently adverse to sustain such a claim in the prison context are those such as being placed in disciplinary confinement or administrative segregation; denied parole; transferred to an institution whose distance made regular family visits impossible; suffering some sort of financial penalty; or being severely limited access to the commissary, library, recreation, and rehabilitative programs. See Dunbar v. Barone, 487 F. App'x at 723, *citing* Mitchell v. Horn, 318 F.3d at 530; Rauser v. Horn, 241 F.3d at 333.

In this case, Plaintiff's retaliation claim is properly dismissed because he cannot show that an adverse action was taken against him. Not only does Plaintiff acknowledge that he has no expectation of privacy in the search of his cell but it appears clear that the search of an inmate's cell does not rise to the same level as being placed in disciplinary confinement or administrative segregation; denied parole; transferred to another institution; suffering some sort of financial

penalty; or being severely limited access to the commissary, library, recreation, and rehabilitative programs.

Further, although Plaintiff's claims revolve around legal material other than UCC material, he does not dispute that UCC material is considered contraband and properly confiscated or that he has possessed UCC material in the past. ECF No. 1, ¶¶ 58, 60-61. Moreover, although not entirely clear, Plaintiff appears to concede that UCC material was amongst the documents confiscated during the search at issue. Id. at ¶¶ 61, 73. Under these circumstances, it cannot be said that the search and confiscation of his legal material constituted an adverse action, particularly one that would cause a person of ordinary firmness to decline to exercise his or her constitutional rights. Indeed, Plaintiff has alleged that his cell was previously searched in 2006 and again in 2011 during which legal material, including UCC material, was confiscated. Neither incident, however, appears to have prevented Plaintiff from exercising his constitutional rights or from filing various lawsuits. As such, Plaintiff is unable to state a claim for First Amendment retaliation and Count II of the Complaint is properly dismissed.

### (3) Conspiracy Claims (Count III)

Plaintiff also alleges that Defendants Mazeski, Trempus and Coleman conspired to deprive him of his First Amendment rights by confiscating his legal material in order to impede him from effectuating service in his state court cases.

"In order to prevail on a conspiracy claim under § 1983, a plaintiff must prove that persons acting under color of state law conspired to deprive him of a federally protected right." Ridgewood Bd. of Educ. v. N.E. ex rel. M.E., 172 F.3d 238, 254 (3d Cir. 1999), *superseded by statute on other grounds as stated in* P.P. ex rel. Michael P. v. West Chester Area Sch. Dist., 585 F.3d 727, 730 (3d Cir. 2009). No cause of action for conspiracy under Section 1983 can be

established, however, absent a showing of an actual violation of a federal right. As explained by the District Court for the Eastern District of Pennsylvania, a conspiracy claim "allows for imputed liability; a plaintiff may be able to impose liability on one defendant for the actions of another performed in the course of the conspiracy." Holt Cargo Sys., Inc. v. Delaware River Port Auth., 20 F. Supp. 2d 803, 843 (E.D. Pa. 1998), aff'd, 165 F.3d 242 (3d Cir. 1999), quoting Dixon v. City of Lawton, 898 F.2d 1443, 1449 n.6 (10th Cir. 1990) (internal quotations omitted). "Section 1983 does not, however, punish conspiracy; an actual denial of a civil right is necessary before a cause of action arises. . . ." Id., quoting Andree v. Ashland Cnty., 818 F.2d 1306, 1311 (7th Cir. 1987) (internal quotations omitted). Thus, while "[a] conspiracy may be charged under section 1983 as the legal mechanism through which to impose liability on all of the defendants without regard to who committed the particular act . . . 'a conspiracy claim is not actionable without an actual violation of section 1983.'" Id., quoting Hale v. Townley, 45 F.3d 914, 920 (5th Cir. 1995) (citation omitted). See In re Orthopedic Bone Screw Prod. Liab. Litig., 193 F.3d 781, 789 (3d Cir. 1999) ("[t]he established rule is that a cause of action for civil conspiracy requires a separate underlying tort as a predicate for liability. Thus, one cannot sue a group of defendants for conspiring to engage in conduct that would not be actionable against an individual defendant. Instead, actionable civil conspiracy must be based on an existing independent wrong or tort that would constitute a valid cause of action if committed by one actor. Standing alone, a conspiracy does no harm and engenders no tort liability") (internal citations and quotations omitted).

Here, because we have already determined that Plaintiff has failed to state a First Amendment violation, it follows that he cannot establish a civil conspiracy to violate his First

Amendment rights under Section 1983. As such, Plaintiff's conspiracy claims are properly dismissed for failure to state a claim upon which relief can be granted.

### b. Fourth Amendment Claims (Count IV)

At Count IV of the Complaint, Plaintiff complains that the seizure of his legal material was unreasonable, thus running afoul of the Fourth Amendment, because the documents that were confiscated had been seized on two previous occasions and returned to him. Having been authorized to possess the same legal material in the past, Plaintiff argues that he had a possessory interest in the material and a reasonable expectation that they would not be confiscated a third time.

"[W]hile persons imprisoned for crime enjoy many protections of the Constitution, it is also clear that imprisonment carries with it the circumscription or loss of many significant rights." Hudson v. Palmer, 468 U.S. 517, 524 (1984). The applicability of the Fourth Amendment, which protects against unreasonable searches and seizures, "turns on whether the person invoking its protection can claim a justifiable, a reasonable, or a legitimate expectation of privacy that has been invaded by government action." Id. at 525, *quoting* Smith v. Maryland, 442 U.S. 735, 740 (1979) (internal quotations omitted). In the prison context, the United States Supreme Court has found that it would be impossible to accomplish prison objectives, including stemming the flow of contraband, if inmates retained a right to privacy in their cells and has therefore held that "the Fourth Amendment proscription against unreasonable searches does not apply within the confines of the prison cell." Id. at 526, 527. "[N]or does it protect against seizures in a prison cell." Booth v. King, 346 F. Supp. 2d 751, 760 (E.D. Pa. 2004), *citing* Hudson v. Palmer, 468 U.S. at 528, n.8. See Hudson v. Palmer, 468 U.S. at 538 ("[t]he fact of arrest and incarceration abates all legitimate Fourth Amendment privacy interest in personal

effects . . . and therefore *all* searches *and seizures* of the contents of an inmate's cell are reasonable") (O'Connor, concurring) (emphasis added); <u>Doe v. Delie</u>, 257 F.3d 309, 316 (3d Cir. 2001) (finding that "[t]he Supreme Court has concluded that the Fourth Amendment right to privacy, to be free from unreasonable searches, is fundamentally inconsistent with incarceration," and that "prisoners do not have a Fourth Amendment right to privacy in their cells"). <u>See</u> <u>also</u> <u>Hudson v. Palmer</u>, 468 U.S. at 529-530 (declining to address the plaintiff's argument that the search of his cell was unreasonable because it was conducted only to harass him having found that the Fourth Amendment's prohibition on unreasonable searches does not apply in prison cells).

Here, not only does Plaintiff concede that he had no expectation of privacy in the search of his cell but it appears clear that under <u>Hudson</u>, Plaintiff does not have a cognizable claim under the Fourth Amendment for the seizure of his legal material either.

Plaintiff's arguments to the contrary are not persuasive. First, Plaintiff argues that he has a cognizable Fourth Amendment claim citing to 42 U.S.C. § 1982. However, as discussed below with respect to Plaintiff's claims brought at Count VII, Section 1982 is irrelevant to this case. <u>See</u> Discussion, *infra*, at pp. 18-19. Second, Plaintiff cites to <u>Zilch v. Lacht</u>, 981 F.2d 694 (3d Cir. 1992) and <u>Roman v. Jeffes</u>, 904 F.2d 192 (3d Cir. 1990), for the proposition that the intentional confiscation of material essential to court cases states a federal law claim. The issue in these cases, however, was whether the plaintiff had stated an access to courts claim under the Fourteenth Amendment and not whether the search of the plaintiff's cell and seizure of his legal material was reasonable under the Fourth Amendment as is at issue here. <u>See</u> <u>Zilch v. Lacht</u>, 981

F.2d at 695; <u>Roman v. Jeffes</u>, 904 F.2d at 197-98.[3]  Third, Plaintiff's claim that the seizure of his

legal material was somehow unreasonable because the same legal material had been confiscated

on two earlier occasions and subsequently returned to him is belied by Plaintiff's own

Complaint.  Plaintiff did not file his two state court actions until November of 2012 and August

of 2013, respectively, and thus the pleadings, motions, court orders and other documents relative

to those suits could not have been confiscated in the two earlier searches which Plaintiff alleges

took place in 2006 and 2011.  ECF No. 1, ¶¶ 58-60, 62.  Indeed, Plaintiff appears to

acknowledge as much in the next paragraph of the Complaint where he states that "[t]he actual

difference between the 2011 search and the 2014 search is the fact that there was significant

additional legal material . . . from two pending [state court] cases."  <u>Id.</u> at ¶ 61.  Plaintiff's

apparent concession that he had additional documents in his possession during the 2014 search

than he had during the two previous searches, coupled with the Supreme Court's recognition that

the flow of illicit material into prisons is a constant problem in prisons today, prior searches of

Plaintiff's cell -- whether fruitful or not -- does not insulate him from subsequent searches.  As

such Count IV of the Complaint is properly dismissed.

### c.      Fifth and Fourteenth Amendment Due Process Claims (Count V)

It is well established that the unauthorized intentional deprivation of property by a prison

official, as has been alleged here, does not violate the Due Process Clause where the inmate has a

meaningful post-deprivation remedy available to him.  <u>Monroe v. Beard</u>, 536 F.3d at 210,

*quoting* <u>Hudson v. Palmer</u>, 468 U.S. at 533.  Thus, in order to succeed on a due process claim, an

inmate must show not only that his property was confiscated but that he was not afforded a post-

---

[3] It should be noted here that, having been decided before <u>Christopher v. Harbury</u>, 536 U.S. 403 (2002), which requires a showing of an actual injury or that the underlying case was non-frivolous to state an access to courts claim, neither the court in <u>Zilch</u> nor the court in <u>Roman</u>, addressed the issue.  <u>See</u> Discussion, *supra*, at pp. 6-10.

deprivation administrative remedy.  <u>Ball v. Campbell</u>, 2011 WL 7080692, at *7 (M.D. Pa. Dec 9, 2011), *Report and Recommendation adopted by* 2012 WL 201846 (M.D. Pa. Jan. 23, 2012).  The United States Court of Appeals for the Third Circuit has found that adequate post-deprivation remedies include the ability to file a state tort action or use of the prison's grievance process. <u>Tapp v. Proto</u>, 404 F. App'x 563, 567 (3d Cir. 2010); <u>Tillman v. Lebanon Cnty. Corr. Facility</u>, 221 F.3d 410, 422 (3d Cir. 2000).  The existence of either of these post-deprivation remedies therefore "forecloses any due process claim . . . even if [the] inmate is dissatisfied with the result of the process."  <u>Iseley v. Horn</u>, 1996 WL 510090, at *6 (E.D. Pa. Sept. 3, 1996), *citing* <u>Austin v. Lehman</u>, 893 F. Supp. 448, 454 (E.D. Pa. 1995).  <u>See</u> <u>Pettaway v. SCI Albion</u>, 2012 WL 366782, at *3-4 (W.D. Pa. Feb. 2, 2012).

Plaintiff in this case not only had a post-deprivation remedy available to him but the record shows that he, in fact, took advantage of that remedy by filing a grievance regarding the confiscation of his legal material.  ECF No. 1, ¶¶ 24, 26, 29.  <u>See</u> ECF No. 1, pp. 63-71.  Under these circumstances, Plaintiff's due process claims brought at Count V are foreclosed and are properly dismissed.

### 2.  Section 1981 Equal Protection Claims (Count VI)

At Count VI of the Complaint, Plaintiff brings equal protection claims pursuant to 42 U.S.C. § 1981 against Defendants Skobol, Pendleton, Mazeski, Trempus and Coleman.

Section 1981(a) "ensures that all persons within the jurisdiction of the United States have "the same right, in every State and Territory ... to make and enforce contracts ... as is enjoyed by white citizens."  <u>Id.</u>  Making and enforcing contracts is also defined as "includ[ing] the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship."  Section 1981(b).  <u>See</u>

Domino's Pizza, Inc. v. McDonald, 546 U.S. 470, 474-75 (2006).  Section 1981 is amongst the many statutes that address racial discrimination.  Its specific function is to protect "the equal right of '[a]ll persons within the jurisdiction of the United States' to 'make and enforce contracts' without respect to race."  Id.  See CBOCS W., Inc. v. Humphries, 553 U.S. 442, 448 (2008) (finding that both Section 1981 and Section 1982 "represent[] an immediately post-Civil War legislative effort to guarantee the then newly freed slaves the same legal rights that other citizens enjoy"); Broom v. Saints John Neumann & Maria Goretti Catholic High Sch., 722 F. Supp. 2d 626, 631 (E.D. Pa. 2010), citing Runyon v. McCrary, 427 U.S. 160, 168 (1976) ("[a]lthough the statute does not use the word race, it is construed as prohibiting racial discrimination in the making and enforcement of private contracts").  Thus, "to establish a basis for relief under section 1981 a plaintiff must show '(1) that he belongs to a racial minority; (2) an intent to discriminate on the basis of race by the defendant; and (3) discrimination concerning one or more of the activities enumerated in § 1981.'"  Estate of Oliva ex rel. McHugh v. New Jersey, 604 F.3d 788, 797-98 (3d Cir. 2010), quoting Pryor v. Nat'l Collegiate Athletic Ass'n, 288 F.3d 548, 569 (3d Cir. 2002) (internal citation and quotation marks omitted).

In this case, Plaintiff's Complaint is devoid of any reference to race or racial discrimination.  Plaintiff therefore has failed to state a claim under Section 1981 and Count VI of the Complaint should be dismissed.

### 3. Section 1982 Deprivation of Property Rights Claims (Count VII)

At Count VII of the Complaint, Plaintiff purports to bring a claim under 42 U.S.C. § 1982, which provides that "[a]ll citizens of the United States shall have the same right, in every state and territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold and convey real property and personal property."  Like Section 1981, the United States Supreme

Court has construed Section 1982 as "deal[ing] only with racial discrimination." Jones v. Alfred

H. Mayer Co., 392 U.S. 409, 413 (1968). See Boddorff v. Publicker Indus., Inc., 488 F. Supp.

1107, 1109 (E.D. Pa. 1980). Plaintiff has not alleged racial discrimination anywhere in his

Complaint and thus Count VII is properly dismissed as well.

### 4. Section 1985 Conspiracy Claims (Count VIII)

Plaintiff alleges at Count VIII of the Complaint that Defendants conspired to interfere

with his First Amendment rights in violation of 42 U.S.C. § 1985(3).

> Section 1985 permits an action to be brought by one injured by a
> conspiracy formed "for the purpose of depriving, either directly or
> indirectly, any person or class of persons of the equal protection of the laws,
> or of equal privileges and immunities under the laws." 42 U.S.C. § 1985(3).
> In a line of cases beginning with *Griffin v. Breckenridge*, 403 U.S. 88 . . .
> (1971), the Supreme Court has made clear what a plaintiff must allege to
> state a claim under § 1985(3): "(1) a conspiracy; (2) for the purpose of
> depriving, either directly or indirectly, any person or class of persons of the
> equal protection of the laws, or of equal privileges and immunities under the
> laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person
> is injured in his person or property or deprived of any right or privilege of a
> citizen of the United States." *United Bhd. of Carpenters & Joiners v. Scott*,
> 463 U.S. 825, 828-29 . . . (1983) (*citing Griffin*, 403 U.S. at 102-03 . . . ).
>
> *    *    *
>
> Despite its application to private conspiracies, § 1985(3) was not
> intended to provide a federal remedy for "all tortious, conspiratorial
> interferences with the rights of others," or to be a "general federal tort law."
> *Id.* at 101-02 . . . . The *Griffin* Court emphasized that because § 1985(3)
> requires the "intent to deprive of equal protection, or equal privileges and
> immunities," a claimant must allege "some racial, or perhaps otherwise
> class-based, invidiously discriminatory animus behind the conspirators'
> action" in order to state a claim. *Id.* at 102 . . . .

Farber v. City of Paterson, 440 F.3d 131, 134-35 (3d Cir. 2006). See Great Am. Fed. Sav. and

Loan Ass'n v. Novotny, 442 U.S. 366, 378 (1979) ("a plaintiff in an action under § 1985(3) must

prove both a conspiracy and a group animus"); Dennison v. Pa. Dep't of Corr., 268 F. Supp. 2d

387, 402 (M.D. Pa. 2003); Diulus v. Churchill Valley Country Club, 601 F. Supp. 677, 681

(W.D. Pa. 1985), *citing* <u>United Brotherhood of Carpenters & Joiners v. Scott</u>, 463 U.S. 825 (1983) and <u>Griffin v. Breckenridge</u>, 403 U.S. 88 (1971) ("[t]he Supreme Court has held that a requisite element of both sections is class-based, invidiously discriminatory animus").

Even a liberal reading of Plaintiff's Complaint shows the absence of any assertions that Plaintiff is a member of a protected class or that Defendants' alleged conduct was motivated by class-based animus. Accordingly, Plaintiff has failed to state a claim based on Section 1985(3), and Count VIII of the Complaint should be dismissed. <u>See</u> <u>Prochaska v. Fediaczko</u>, 473 F. Supp. 704, 709 (W.D. Pa. 1979) (finding that the plaintiff's failure to allege membership in a class of persons against which the defendants directed a class-based animus was fatal to his Section 1985(3) based on a conspiracy directed toward Plaintiff for individual exercise of his First Amendment rights).

### 5.    State Law Conversion Claims (Counts IX.A and IX.B)

Having found that Plaintiff is unable to sustain his federal claims against any of the Defendants it appears that only Plaintiff's state law claims for conversion remain. Where all claims over which the Court has original jurisdiction have been dismissed, however, the district court may decline to exercise supplemental jurisdiction over the remaining claims. 28 U.S.C. § 1367(c)(3). Although declining to exercise jurisdiction is within the discretion of the district court, the Court of Appeals for the Third Circuit has held that, absent extraordinary circumstances, "pendent jurisdiction should be declined where the federal claims are no longer viable." <u>Shaffer v. Bd. of Sch. Dir. Albert Gallatin Area Sch. Dist.</u>, 730 F.2d 910, 912 (3d Cir. 1984) (citations omitted). <u>See</u> <u>Noble v. Gaston</u>, 2009 WL 198252, at *5 (W.D. Pa. Jan. 27, 2009).

Here, there does not appear to be any extraordinary circumstances surrounding this case which would warrant the exercise of supplemental jurisdiction over Plaintiff's state law claims. The Court should therefore decline to exercise supplemental jurisdiction over Plaintiff's remaining state law conversion claims and they too should be dismissed.

## D.    CONCLUSION

For the foregoing reasons, it is respectfully recommended that Defendants' Motion to Dismiss Complaint, ECF No. 30, be granted.

Although the United States Court of Appeals for the Third Circuit has held that when dismissing a civil rights case for failure to state a claim, a court must give the plaintiff an opportunity to amend the complaint whether or not the plaintiff has asked to do so, the Court is not required to allow an amended complaint to be filed where it would be inequitable or futile. See Fletcher–Harlee Corp. v. Pote Concrete Contractors, Inc., 482 F.3d 247, 251 (3d Cir. 2007), *citing* Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004). Here, for the reaons set forth herein, there do not appear to be any facts that would serve to resurrect Plaintiff's claims. Allowing Plaintiff to amend his Complaint would therefore be futile and the Court need not give Plaintiff the opportunity to do so.

In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1), and Local Rule 72.D.2, the parties are permitted to file written objections in accordance with the schedule established in the docket entry reflecting the filing of this Report and Recommendation. Objections are to be submitted to the Clerk of Court, United States District Court, 700 Grant Street, Room 3110, Pittsburgh, PA 15219. Failure to timely file objections will waive the right to appeal. Brightwell v. Lehman, 637 F.3d 187, 193 n. 7 (3d Cir. 2011). Any party opposing objections may file their response to the objections within fourteen (14) days thereafter in accordance with Local Civil Rule 72.D.2.

Respectfully submitted,


/s/ Maureen P. Kelly
MAUREEN P. KELLY
CHIEF UNITED STATES MAGISTRATE JUDGE


Dated: July 22, 2015


cc:    The Honorable David Stewart Cercone
       United States District Judge

       Douglas E. Humphrey
       CL-4146
       SCI Fayette
       P.O. Box 9999
       LaBelle, PA 15450-0999

       All counsel of record via CM/ECF